(Decided January 11th, 1859.)

## William Fisher *vs.* Henry Rieman, Alex. Rieman and Jos. H. Rieman.

Where a promissory note is *bona fide sold* by a *public bill and note broker*, by delivery merely, without endorsement, or any *express* warranty or representation, the broker acting as agent, but not disclosing the name of his principal, and no debt being due the purchaser, or created at the time, the latter cannot recover from the broker the money paid for the note, though the names of the maker and one of the endorsers thereon proved to be *forgeries.*

In such case, there is no implied warranty of the *genuineness* of the note, but the law respecting the *sale of goods* is applicable. The only implied warranty is, that the broker owns, or is lawfully entitled to dispose of, the paper.

Appeal from the Superior Court of Baltimore city.

*Assumpsit* brought by the appellees against the appellant, to recover back money paid by the plaintiffs to the defendant, for a promissory note. The defendant was a public bill and note broker, and *sold* the note in question to the plaintiffs,

63     v. 12.

without disclosing the name of his principal. The names of the maker and one of the endorsers on the note proved to be *forged,* but this fact was not known by the defendant at the time of the sale. The signature of the other endorser was genuine. The declaration contained the common money counts. Plea, *non assumpsit.*

The facts of the case, and the prayer of the plaintiffs, which was granted by the court below, are fully stated in the opinion of this court. The defendant offered three prayers, which were rejected, and they need not be stated, as no opinion was pronounced upon them by this court. The following opinion was delivered by the court below (LEE, J.) upon granting the plaintiffs' prayer:

"This is an action to recover from [the defendant, William Fisher, a sum of money, which the plaintiffs paid for a promissory note sold to them by the defendant, and they seek to recover it back, on the ground that the note, when sold, was not genuine, the name of the drawer and one of the endorsers being forged; and, upon the trial, the plaintiffs to support the issue on their part, produced the promissory note, purporting to have been made by Edward Dunn in favor of Jacob F. Kridler, and endorsed by said Kridler and Henry Shirk, for $861, payable eleven months after date, and dated Baltimore, February 1st, 1854. They further proved, by a competent witness, that they purchased said note from the defendant Fisher, who was a public bill and note broker in the city of Baltimore, (and who dealt in having notes discounted or sold,) for the sum of $651.08; and also proved that the defendant was generally known in the city as a public bill and note broker, largely engaged in the selling of bills, notes and stocks, and that the plaintiffs had frequently bought the promissory notes of other persons from said defendant before the purchase by the plaintiffs of the note in this case; that the defendant was in the habit of bringing to the counting-room of the plaintiffs a large number of notes at a time, for the purpose of selling them to the plaintiffs before the sale of the note in question. And the plaintiffs further proved by Edward Dunn and Henry Shirk, that their names written upon the said note, as maker and en-

dorser, were not in their handwriting, but were forged; but that the name of Jacob F. Kridler, written in two places on the back of said note, was his genuine handwriting, and that Kridler was a man in good credit in the city of Baltimore, down to the 27th of November, 1854, when he absconded, having committed other forgeries; and that said Kridler left some property behind him, upon which there are mechanics' liens.

"'The defendant, on his part, gave in evidence, by a competent witness, (his clerk,) that at the time of the sale by the defendant to the plaintiffs, of the note in question, Kridler was in the habit, before this time, of putting into the hands of Fisher, as a bill and note broker, for the purpose of sale on account of said Kridler, various notes held by Kridler and endorsed by him, but the particular notes were not named or recollected by the witness; and also proved that the defendant is a public bill and note broker in the city, for all persons who may employ him for that purpose, handing over to such persons the proceeds of sale of such notes as he sells, less the commissions charged for such sales, and that the proceeds of the sale of the note now in question, were paid by the defendant to his principal who employed him to sell it, before the alleged forgery of the names of Dunn and Shirk, upon the said note was suspected, either by the plaintiffs or defendant.

"Upon these facts, the plaintiffs by their counsel, asked an instruction from the court, that they were entitled to recover in this suit, and counter-instructions were prayed by the defendant.

"I am aware that the question is an interesting one, and for the first time raised in this State, as to the liability of a public note or bill broker for the genuineness of a note or bill sold by him, he at the time being ignorant of the fact; in other words, both the plaintiffs and the defendant in this case are shown to have been innocent parties, and ignorant of the forgeries on the note in question at the time the sale of it was made. Who shall, in such a case as this, bear the loss?

"It has been contended at the bar, that the defendant, a public bill broker, should be regarded as the principal, or that in

selling the note, even as agent, there was, on his part, an implied warranty to the vendees, (the plaintiffs,) of the note being what it purported to be, a valid and genuine note; that the sufficiency, or solvency, or ability of the parties to the note, was the risk which the vendees encountered, but in the event of the note being false and forged the vendor should bear the loss.

"On the other hand, it is insisted by the defendant that, as the plaintiffs in this case had dealt with him as a broker, and knew the business which he was engaged in, which was the disposing by sale of notes on account of other parties, they should have known or presumed he was an agent, and acted with him as such in the sale of notes.

"English and American authorities have been cited, which, I think, apart from a sound rule of public policy, determine the liability of the proper party here; and, without referring particularly to all the authorities, I will name the last leading case in England, of *Gurney, et al., vs. Womersley, et al.,* decided as late as November 1854, by the court of Queen's Bench, in which Lord Campbell decides, that the vendor of a bill of exchange, though no party to the bill, is responsible for its genuineness; and if it turns out that the name of one of the parties to it is forged he is liable to the vendees.

"The defendants in that case were bill brokers, who received the bill to be discounted, and took it to the plaintiffs, who were money lenders, with whom the defendants, as bill brokers, had previously had similar dealings.   The defendants did not disclose their principal, and were regarded as principals; and it was held by the court, all the judges concurring, that they were liable, and the plaintiffs should recover back the amount paid by them for the forged bill.   Lord Campbell, at page 259 of vol. 28, of *Eng. Law and Eq. Rep.*, says:

"'Here that which *purported* to be the acceptance of one of the parties to the bill, and upon which the plaintiffs gave credit and relied, was a forgery, and of no value whatever; in fact, the instrument altogether became of no value, for Anderson was a bankrupt.   There was, therefore, clearly a failure of consideration entitling the plaintiffs to recover.'

"'The case at bar is like the case decided by Lord Campbell, and the same rule should apply, in my opinion, to its determination.

"No decision in England, before or since, is in conflict with that decision; and I will now refer to one or two American cases, read at the bar, from which it will be seen that, except the case of *Baxter vs. Duren*, in 29 *Maine Reports*, (chiefly relied on by the defendant here,) no authority can be found to impair or conflict with the judgment of Lord Campbell. In the case of the *Canal Bank vs. The Bank of Albany*, 1 *Hill Sup. Court Report of New York*, page 290, Judge Cowan in substance affirms the doctrine established by Lord Campbell, and says: 'No doubt the parties are equally innocent in a moral point of view. It was the duty, or more properly a measure of prudence, in each to have inquired into the genuineness of the note. They (the defendants) have obtained the plaintiffs' money without consideration, and the plaintiffs have a right to recover, (though there was ignorance on both sides of any forgery.') That was a case of forged bank notes passed by the defendants to the plaintiffs. Other decisions in Massachusetts and New York sustain the same view. But the case of *Baxter vs. Duren*, 29 *Maine*, 440, is invoked to establish a different rule from that laid down by Lord Campbell, and confirmed by many American authors. (See cases referred to in *Story on Bills*.) With entire respect for the court, it will be found, on examining the authorities upon which it rests its decision in *Baxter vs. Duren*, at page 441, that they do not sustain the doctrine of the learned Judge, viz., 'that where no debt is due or created at the time, and the paper is sold as other goods and effects are, the purchaser cannot recover from the seller the purchase money. There is in such case no implied warranty of the genuineness of the paper; the law respecting the sale of goods is applicable; the only implied warranty is, that the seller owns or is lawfully entitled to dispose of the paper or goods.' If this be the true rule, which I respectfully submit cannot be sustained by authority or on principles of public policy, then in no event could a bill broker be liable, either as principal or agent, if no implied

warranty attaches, unless where the note is paid away for a previous debt or in payment of goods, &c.

"*A public broker, like the defendant in this case,* must be regarded as the *principal* in all his business transactions, unless he discloses his agency at the time. How is he otherwise an agent, and whose agent is he? To illustrate the force and justice of this doctrine, as sanctioned by the court of Queen's Bench and by Justice Story, suppose a bill broker sells a coupon bond, for instance, which is transferred by delivery only, without an endorsement or formal transfer, and it turns out to be a forgery, can it be maintained that he is not responsible for the genuineness of the bonds; and can the fact of his being known to be a general agent relieve him, if at the time of the sale he did not disclose the principal or party for whom he was agent in this particular transaction? The answer is conclusive, and his liability certain. To relieve himself, therefore, in a case like this, from responsibility, he should have disclosed his principal. This can be the only safe rule, which, it will be found, is sanctioned by Judge Story, in his learned works on promissory notes and agency. A contrary doctrine, carried to the extent of the case in *Baxter vs. Duren,* in 29 *Maine Reports,* would open the door to fraud, gross injustice, and commercial inconvenience.

"Judge Story, in his admirable treatise on Promissory Notes and Bills of Exchange, at page 132, forcibly states the doctrine as it now stands supported by the highest authority in England and this country, and by principles of sound reason and public policy. He says:

"'Unless it be expressly otherwise agreed, the holder transferring a note is not exempt from all obligations and responsibilities, but he incurs some, although they are of a limited nature.'

"In the first place, *he warrants by implication* (unless otherwise agreed) that he is *a lawful holder, and has a just and valid title to the instrument, and a right to transfer* it by delivery, for this is implied as an obligation of good faith. In the next place, *he warrants in like manner that the instrument is genuine, and not forged or fictitious.* (It will be found

stated, not as a part of the learned author's text but inserted by the editor in brackets, that the case of *Baxter vs. Duren,* in *Maine Reports,* has decided otherwise. But Judge Story does not adopt or sanction the decision; on the contrary, refers in the notes to his work to authorities directly in conflict with it.)

"The case of *Baxter vs. Duren,* 29 *Maine Rep.,* was decided after Judge Story's death; and the reference to this case at sec. 118 of *Story on Promissory Notes,* (New Edition) is marked by brackets, and Mr. Charles Sumner, the Editor of this edition in 1851, says, 'the present edition contains the authorities furnished by cases decided since the publication of the 2nd edition—the new matter now introduced, (except merely the names of additional cases,) is marked by brackets.'

"And to the advertisement of the 2nd edition, Mr. W. W. Story (the son of the eminent Judge) states, in 1847, 'that the present edition is a re-print of the former edition, except that the manuscript notes left by the author—*and the late cases* arising in the law applicable to *promissory notes*—have been added by the Editor.'

"The cases of *Fenn vs. Harrison,* 3 *Term Rep.,* 757, and the *Bank of England vs. Newman,* 1 *Ld. Ray.,* 442, (referred to in *Chitty on Bills,* 245,) as also the American case of *Ellis vs. Wild,* 6 *Mass. Rep.,* 321, relied on by the Judge in 29 *Maine Rep.,* will be found to depend on a very different state of facts from the case at bar, and can not sustain the doctrine, that the vendor is not liable to the vendee, upon the sale of a forged or fictitious note or bill. In none of those cases were the notes *invalid* (or not *genuine,* except in the case in 6 *Mass. Reports,* which, however, turned on the plaintiffs having *agreed* to buy the notes in question, by giving a quantity of merchandize (rum) for them.

"Hard as in the present case the rule may operate, yet it is *the only* one which can determine with safety the duties and obligations of parties to a transaction like this. If the plaintiffs and defendant acted, as is conceded, in good faith and in ignorance of the forgery, then the loss must fall on the vendor. He is nearest the inception of the transaction, and, if acting as

principal, must be clearly *liable,* if he disposes or sells an invalid bill or forged note; or, if acting as agent, he must be presumed to know the party who employed him, and the circumstances of the case; at all events, as principal or agent, he comes under an implied guaranty or warranty, to the vendee, of the *genuineness of the paper sold,* unless he discloses at the time his principal, if he acts as an agent.

"Entertaining these views, I am of opinion that the defendant is liable in this action, and that a verdict ought to be entered for the plaintiffs and therefore grant the plaintiffs' prayer."

The verdict and judgment were in favor of the plaintiffs, and the defendant appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*Wm. A. Fisher* and *St. G. W. Teackle* for the appellant:

1st. The note in this case was *sold* by the appellant, a public bill and note broker, without solicitation. The appellees *purchased* it upon the strength of the names appearing upon its face, and not upon the credit of the seller. Each party was ignorant of the *forgery,* and the loss must fall on the holder; for, as we insist, there was no contract, *express* or *implied,* by which the seller could be held liable to the purchasers—there was no *privity* between them. A bill and note broker is not bound by the ordinary rule of agency in the sale of property, where the actual owner is concealed. As a general rule, an agent failing to disclose the name of his principal, is personally responsible on a contract made by him, (*Story on Agency, sec.* 267,) but a *broker* is a mere negotiator between other parties, and never acts in his own name, but in the names of those who employ him—he is strictly a middle-man, or intermediate negotiator between the parties, (*Story on Agency, sec.* 28,) and when a party deals with such *broker,* he knows that he is dealing with one who, from the nature of his business, is acting for those who employ him. In the authorities cited by the appellee, the court will find that no question of *agency* was presented. There is *now* no such thing as agency in the

bill brokers' business in London—they are *there* capitalists, who deal wholly on their own credit, and sales by *them* are contracts between the purchasers and the brokers as principals. 82 *Eng. C. L. Rep.*, 135, *Gurney vs. Womersley*, shows this, and also establishes the further proposition, that if the brokers had sold *as agents*, they would not have been held liable. In that case the seller received the proceeds of sale, while here the purchasers dealt with the broker as an agent selling on agency, whose principal received the proceeds. In *Jones vs. Ryde*, 5 *Taunt.*, 488, the defendants *discounted* the bill with the *brokers*, who acted for themselves as principals, and therefore a *loan* or *debt* was created at the time, which is another distinction to be observed in the cases. Where the bill or note is passed in *payment* of an antecedent or pre-existing debt, or where it is *discounted*, or, in other words, where a loan or debt is created *at the time*, and by the transaction itself, the broker would be responsible. But here there was no express warranty or representation, and no debt existing, in *payment* of which the note was received, nor was any *loan* made or *debt* created at the time. It was a simple *sale*, and not a *discount*, and the note was passed by *delivery* merely, without *endorsement*. The case of *Baxter vs. Duren*, 29 *Maine Rep.*, 434, reviews all the cases, and lays down the rule, showing that in the *sale* of a bill or note by a public bill and note broker, where he acts as agent, no warranty of the genuineness of the paper is implied, and that such warranty is only implied where the note has been delivered in *payment* of a pre-existing debt, or where a loan or debt is created at the time. No case can be found where a broker, selling a note *bona fide* and paying the proceeds over to his principal, has been held answerable for a failure of consideration for *forgery* or *otherwise*. In such a case, the law applicable to the *sale* of goods applies. *Story on Prom. Notes, sec.* 118, *(New Ed.) Chitty on Bills*, 246. 6 *Mass.*, 321, *Ellis vs. Wild*. 3 *Burr.*, 1354, *Price vs. Neal*. 3 *Term Rep.*, 759, *Fenn vs. Harrison*. *Ryan & Moody*, 49, *Fuller vs. Smith*. *Chitty on Cont.*, 622. 2 *Caines' Cases*, 48, *Sexias vs. Wood*. 1 *Wend.*, 185, *Welch vs. Carter*. 2 *Espinsse*, 572.

2nd. But if the above position should be decided adversely to the appellant, still the judgment must be reversed upon his *second* and *third* prayers, because there was not a *total* failure of consideration. The action is for money had and received, and to recover under it, there must be a total failure of consideration. The case of *Gurney vs. Womersley,* already cited, fully establishes this position. In that case the note was purchased solely on the faith of the endorser, whose name was forged, and hence there was a total failure of consideration, whilst in this it does not appear upon the strength of *which* name the purchasers bought, and the name of Kridler was genuine. and he was in excellent credit until long after this transaction. There could not have been, therefore, in this case, a total failure of consideration. On this point see, also, *Brown on Actions at Law,* 529, in 45 *Law Lib.* 5 *Humph.,* 496. 24 *Eng. Law & Eq. Rep.,* 156, *Gompertz vs. Bartlett.*

*Geo. W. Dobbin* for the appellees:

The appellant, though acting as a bill broker, was liable as principal to the appellees, not having disclosed, at the time of the sale, the fact of his agency, and the name of his principal, and is bound to refund the money paid him by the appellees for the note in question, because there was an implied warranty that the note was genuine, and also because there was a failure of consideration. It is a general principle of law, that money paid upon a consideration which has wholly failed, may be recovered back in an action for money had and received. This principle is not denied, and the effort on the part of the appellant, is to except this case from the general rule. The facts in the case show that the note was discounted as a bankable transaction, and that the names of the drawer and one of the endorsers thereon, were forgeries. This is such a failure of consideration as warranted the instruction given by the court below. If the article sold be not what it professes to be, the vendor is answerable over. Here the thing sold professed to be a promissory note, when, in fact, it never was such, because the name of the *drawer* was forged, as well as

that of one of the endorsers. The note, in fact, never had a *drawer*, and, therefore, never was a promissory note. It was taken as a mere discount, and was discounted upon the strength of the written security on its face—the drawer and endorsers. This was what it was represented to be. If either name was *forged*, it was not what it purported, and was represented to be, and falls within the case of *Gurney vs. Womersley*, which decides that where a party's name is genuine, there is no implied warranty as to his *solvency*, but that there is such warranty that the name is genuine. All the authorities show that if the article sold be not what it purports to be, the warranty attaches. But it is said Fisher was a bill broker, and is not answerable as ordinary agents are. He is not exempt by law from any ordinary liability. His is not a branch of business more favored than any other. But, in fact, he does not appear here as a bill broker, but as a factor, and if he did not discover his principal, he is bound himself. Again, it is said there was but a partial failure of consideration. But Kridler became insolvent, his forgeries had been discovered, and he had run away before the maturity of the note, and left no redress against him; there was, in fact, a total failure of consideration. The following authorities fully sustain the positions here assumed. 5 *Taunt.*, 488, *Jones vs. Ryde*. *Ibid.*, 495, *Bruce vs. Bruce*. 1 *Curr. & Payne*, 197, *Fuller vs. Smith*. 24 *Eng. Law & Eq. Rep.*, 156, *Gompertz vs. Bartlett*. 82 *Eng. C. L. Rep.*, 132, *Gurney vs. Womersley*. *Story on Agency*, sec. 267. 1 *Parsons on Cont.*, 218. 89 *Eng. C. L. Rep.*, 53, *Hall vs. Conder*.

ECCLESTON, J., delivered the opinion of this court.

This is an action of *assumpsit*, in which the *nar* contains the four common money counts only. The plea is *non assumpsit*.

At the trial, the plaintiffs gave in evidence a promissory note with the protest thereof attached. The following is a copy of the note:

"$681.　　　　　　　　　Baltimore, Feb'y 1st, 1854.

Eleven months after date, I promise to pay to the order of

J. F. Kridler six hundred and eighty-one $\frac{00}{100}$ dollars, value received.                                             Edwd. Dunn."

On said note the following names appear as endorsers:

"Jacob F. Kridler,
Henry Shirk,
Jacob F. Kridler."

Black, a witness for the plaintiffs, testified that they purchased said note from the defendant, who was a public bill and note broker in the city of Baltimore, for the sum of six hundred and fifty-one dollars and eight cents. Upon cross-examination, this witness stated that the defendant was generally known in the city of Baltimore as a public bill and note broker, largely engaged in the business of selling bills and notes, and that the plaintiffs had frequently bought the promissory notes of other persons from said defendant, before the purchase by the plaintiffs of the note offered in evidence. That the defendant was in the habit of bringing to the counting-room of the plaintiffs a large number of notes at a time, for the purpose of selling them, or some of them, to the plaintiffs, before the sale to them of the note in question.

It was proved by the plaintiffs that the name of Dunn, as maker, and that of Shirk, as endorser of the note, were forged. But the plaintiffs' witnesses, who proved this, testified that each of the two signatures of Jacob F. Kridler upon the note was the genuine signature of said Kridler; and that he was in excellent credit in the city of Baltimore down to the 27th day of November 1854, when he ran away from Baltimore, having committed other forgeries; and that he left some property behind him in the city on which there were "mechanics' liens."

It was admitted, that before the suit was brought, the plaintiffs offered to return the said note to the defendant, and he refused to take it.

The defendant's witness, Patterson, testified that he was then in the employment of the defendant, and was so before and at the time of the sale of the note by the defendant to the plaintiffs; that Jacob F. Kridler was in the habit, before said sale, of putting into the hands of the defendant, as a bill and note broker, for the purpose of sale on account of said Kridler,

Fisher vs. Rieman, et al.

various notes held by him, and with his name on them, but that the witness could not recollect particularly the note in question as one amongst those so put into defendant's hands; that the defendant is a public bill and note broker in the city of Baltimore, for all persons who may employ him for that purpose, handing over to such persons the proceeds of sale of such notes as are so sold, less the usual commission charged upon such sales; and that the proceeds of sale of the note given in evidence in this case, were paid by the defendant to his principal, who employed him to sell it, less the usual commission aforesaid, before the alleged forgery of the names of Dunn and Shirk upon said note was suspected, either by the plaintiffs or the defendant.

The plaintiffs then prayed the court to instruct the jury, "that if they find from the evidence that the defendant sold to plaintiffs the paper given in evidence by the plaintiffs, purporting to be the promissory note of Edward Dunn, in favor of, and endorsed by Jacob F. Kridler, and also purporting to be endorsed by Henry Shirk, and if they further find that the names of Edward Dunn and Henry Shirk, as drawer and endorser of said note, were forgeries, that then the plaintiffs are entitled to recover such sum as the jury may find was paid by them to the defendant for said paper, notwithstanding the jury may find that the defendant acted as agent in said sale, unless they also find that the defendant, at the time of such sale, disclosed the name of the person or persons for whom he acted as agent in such transaction."

The defendant submitted three prayers.

The court granted that of the plaintiffs, but rejected all those of the defendant; to which ruling of the court the defendant excepted; and by this appeal he seeks to have the judgment below reversed.

In *Story on Prom. Notes, sec.* 118, *(New Ed.,)* when speaking with reference to the responsibility of a party who transfers a note by delivery merely, it is said, he warrants the instrument to be genuine, and not forged or fictitious, "unless where the note is sold as other goods and effects, by delivery merely, without indorsement, in which case it has been decided

that the law respecting the sale of goods is applicable, and that there is no implied warranty." See, also, the cases cited in *note* 1 to this *section.*

In *Chitty on Bills*, *ch.* 6, *page* 246, he states the law to be, that the assignee of a bill has, in general, no right of action whatever against the assignor, in case the bill turns out to be of no value, "when a transfer by mere delivery, without indorsement, is made by way of *sale* of the bill or note, as sometimes occurs, or exchange of it for other bills."

Of course neither of these authors has reference to any case in which the assignor has been guilty of any fraud in the transaction.

In *Baxter vs. Duren*, 29 *Maine*, 434, the plaintiff instituted an action of *assumpsit*, relying upon a supposed warranty of the genuineness of the signatures of two endorsers upon a promissory note.

The signature of C. & J. S. Bedlow, as makers of the note, payable to J. P. Wheeler, or order, was genuine. The names of J. P. Wheeler and William Deming, as endorsers, were forged.

The defendant handed the note to Wood, a broker, for discount or sale, without endorsing it. The note was sold to the plaintiff by the broker at a discount, in which transaction he acted in his ordinary course of business. The plaintiff, the defendant, and the broker, were all entirely *ignorant* that the names of the endorsers were forged. Before the note became due, the makers failed. The broker knew that the defendant was acting as agent of the makers. There was no proof that the broker informed the plaintiff that he was acting for the defendant, or that the defendant was acting for the makers.

One of the questions involved in the case was, whether Wood, the broker, who was examined as a witness by the plaintiff, and objected to by the defendant, was not incompetent, on the ground of interest? His interest being supposed to consist in a liability on his part to refund the money to the plaintiff; and if, by his testimony, he could enable the plaintiff to recover the amount from the defendant, as the principal for

whom the witness had acted as agent, he, the agent, would be relieved from liability.

The court thought the plaintiff might be presumed to have known, from the nature of the broker's business, that he was acting as an agent of some person unknown; and that, therefore, the broker was to be regarded as one dealing with the plaintiff as an agent, without disclosing his principal. And that the defendant was in a like position, dealing with the plaintiff by an agent, and yet dealing with him as an agent, without disclosing his principal.

After speaking in relation to the rule of law applicable to an agent under such circumstances, the court say: "It becomes, therefore, necessary to inquire whether Wood, by making sale of the note by delivery merely, without indorsement, and without making, as of his own knowledge, any representations respecting it, and without disclosing his principal, became liable to refund the money which he obtained by the sale of it."

It is then said: "When an innocent holder of negotiable paper parts with it by delivery, without indorsing it, in payment of a debt due, or then created, as for example, in payment for goods then purchased, or by way of discount for money then loaned by a bank, banker, or individual, and the paper proves to have been forged, the debt or loan, not being paid by it, may be recovered. In such case there is a warranty implied by law, that the paper is genuine, as there is that coin or bank notes, used for like purposes, are genuine. *Jones vs. Ryde,* 5 *Taunt.,* 488. *Fuller vs. Smith,* 1 *C. & P.,* 197. *Camidge vs. Allenby,* 6 *B. & C.,* 373, *per Littledale, J. Coolidge vs. Brigham,* 1 *Metc.,* 547.

"When no debt is due or created at the time, and the paper is sold as other goods and effects are, the purchaser cannot recover from the seller the purchase money. There is in such case no implied warranty of the genuineness of the paper. The law respecting the sale of goods is applicable. The only implied warranty is, that the seller owns or is lawfully entitled to dispose of the paper or goods. *Bank of England vs. Newman,* 1 *Ld. Raym.,* 442. *Fenn vs. Harrison,* 3 *Term Rep.,*

Fisher *vs.* Rieman, *et al.*

757.   *Fydell vs. Clark,* 1 *Esp. Rep.,* 447.   *Emly vs. Lye,* 15 *East.,* 6.   *Ex-parte Shuttleworth,* 3 *Ves.,* 368.   *Ex-parte Blackburne,* 10 *Ves.,* 204.   *Ellis vs. Wild,* 6 *Mass.,* 321.''

It was held, that Wood was not liable to refund the amount received for the note, and was, therefore, a competent witness.

Upon the application of the same principle which prevented Wood from being liable, the court decided that the defendant was not liable, without proof of an express warranty, because ''he had a right to dispose of the note as a piece of property, deriving his authority from the makers, who were liable.''

We have been induced to examine that case with much care, because we think it was correctly decided, and is, in most respects, very similar to the one before us.

There, in deciding against the plaintiff's right to recover, much stress is laid upon the facts, that the transaction was a *sale,* when no debt was due to the plaintiff, or created at the time; and the note was parted with by mere delivery, without indorsement, or any express warranty.

These important facts existing, the defendant was held not to be responsible for the return of the money paid for the note, although the names of the indorsers were forged, (this fact not being known to the plaintiff, defendant, or broker,) and notwithstanding the makers failed before the note became due.

The court express the opinion, that the cases which had been decided on this subject, were rather apparently in conflict than really so, and that this apparent conflict had arisen from a failure to notice the important difference between a case where an innocent holder of negotiable paper parts with it by delivery, without indorsing it, *in payment of a debt due, or then created,* and a case where the paper is so parted with, *by a sale,* when *no debt is due, or created at the time.*

The evidence before us shows clearly that the name of Dunn as maker, and Shirk's name as indorser, were forged; but that the plaintiffs and the defendant knew nothing of this until after the sale, and the money had been paid over by the defendant to Kridler, less the usual commissions.   Kridler is the payee in the note, and his two signatures on the back of it, are in his handwriting.   The plaintiffs' own witness proves that the

Fisher vs. Rieman, et al.

note was *purchased* by the plaintiffs from the defendant, who was a public bill and note broker, and generally known and largely engaged as such; the plaintiff having frequently bought other notes from the defendant, previously to the purchase of the note in question.

The note is dated February 1st, 1854, payable eleven months after date.

It is in proof that Kridler was in excellent credit down to the 27th of November 1854. That he left some property behind him, on which there were mechanics' liens.

In addition to proof of *a sale* by the plaintiffs' witness, the defendant's also speaks of the transaction as a *sale*. And the prayer of the plaintiffs asked the court to instruct the jury, "that if they find from the evidence that the defendant *sold* the paper given in evidence by the plaintiffs," &c.

There was no endorsement on the note by the defendant, no evidence of any express warranty given, or representation made by him, amounting to a warranty, that the forged signatures were genuine; nor was there any proof of a previously existing debt, or of one created at the time by a loan. And considering this to be a sale, as other goods and effects are sold, we think that, according to the principles announced in *Baxter vs. Duren*, the plaintiffs are not entitled to recover, and that the court were wrong in granting the prayer of the plaintiffs.

We have carefully examined the cases relied upon by the appellees' counsel, and, in our opinion, there are features in each which distinguish them, materially, from the case before us.

This judgment will be reversed, without ordering a *procedendo*, and therefore we need not decide whether the defendant's prayers were properly refused or not.

*Judgment reversed, and no procedendo ordered.*

(Decided January 13th, 1859.)