WILLIAM SEEMULLER and BUCHANAN MERRYMAN, trading as WM. SEEMULLER & COMPANY *vs.* ED-WARD FUCHS.

*Auctioneer—Sale—Undisclosed owner—Personal liability.*

Where a sale is made by an auctioneer, and the name of the owner of the property sold is not disclosed, and the same is afterwards claimed by a superior title, the purchaser may, in an action for money had and received, recover the purchase money of the auctioneer.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of this Court. It was tried in the Court below (BROWN, C. J.,) without the intervention of a jury.

The cause was originally argued before ALVEY, C. J., STONE, MILLER, ROBINSON, and BRYAN, J., and subsequently, under an order of the Court, was re-argued on notes and submitted to the full bench.

*David Stewart,* and *John Stewart,* for the appellants.

*J. Upshur Dennis,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

One Weeks, being in the possession of a piano under a *contract of hiring,* sent it to the warerooms of the appellants, who are *auctioneers,* to be sold. It was sold by them at auction without disclosing the name of the owner, and was bought by the appellee. The piano was subsequently replevied by the owner, and this suit is brought by the purchaser against the auctioneers to recover the

money paid on account of the purchase. Now we take the law to be well settled, that one selling property as an agent, without disclosing the name of the principal, binds himself personally. In such cases the purchaser has the right to rely upon the responsibility of the agent by whom the sale is made, and is not obliged to rely upon the responsibility of an unknown and perhaps irresponsible principal. The same rule applies to sales made by auctioneers. Whether the doctrine of *implied warranty of title* attaches to a sale made by an auctioneer, for the breach of which he would be liable for unliquidated damages, is a question not necessary to be decided in this case. Be this as it may, it is clear, we think, both on reason and authority, that if a sale is made by an auctioneer without disclosing the name of the owner, and the property is afterwards claimed by a superior title, the purchaser may, in an action for money had and received, recover the purchase money of the auctioneer. There is in such a case an entire failure of consideration, and the sale having been made by the auctioneer, the only person known as vendor, it is but just and right that he should be answerable to the purchaser. There is certainly no hardship in this rule of law, because the auctioneer knows the person on account of whom the goods are sold, and has it in his power to protect himself against loss. Any other rule would not only be a fraud on purchasers, but destructive of all confidence in auction sales.

So far back as *Hanson vs. Roberdeau, Peake's N. P. C.,* 163, Lord KENYON said, that " though where an auctioneer names his principal, it is not proper that he should be liable to an action, yet it is a very different case when the auctioneer sells the commodity without saying on whose behalf he sells it ; in such a case the purchaser is entitled to look to him personally for the completion of the contract."

We have not been able to find a single case in conflict with the rule thus laid down. On the contrary, it is main-

tained by all the subsequent decisions, both in England and in this country. *Jones vs. Littledale*, 6 *Adolp. & Ellis*, 486; *Mills vs. Hunt*, 20 *Wend.*, 431; *Franklyn vs Lamond, et al.*, 4 *C. B.*, 637, (56 *Eng. Com. Law Rep.*) And in all the text books the principle is laid down in the broadest terms. In his *Work on Agency*, Judge STORY says: "Thus, where a contract is made with an auctioneer for the purchase of goods at a public sale, and no disclosure is made of the principal on whose behalf the commodity is sold, the auctioneer will be liable to the purchaser to complete the contract, although from the nature of public sales it is plain he acts as agent only." *Story on Agency*, sec. 267.

Again, in *Addison on Contracts*, the author says, "Every auctioneer who sells, without, at the time of the sale, disclosing the name of his principal, contracts personally." *p.* 642. In *Babington on Auctions*, 9 *Law Lib.*, sec. 185, the rule is thus laid down: "Where an auctioneer does not disclose the name of his principal at the time of the sale, he is personally liable to an action for damages for not completing the contract."

The cases relied on by the appellants are cases in which the sales were made by administrators or executors or trustees or by sheriffs or other officials, in which the nature and character of the sales, and the objects for which they are made are well known to the purchaser. Besides, one making a sale in an official capacity cannot, for reasons of public policy, be held personally responsible, for otherwise "no one," as Judge ARCHER says in *Mockbee vs. Gardner*, 2 *H. & G.*, 176, "could be induced to accept the office." It can hardly be said that an auctioneer is in this sense a public officer. There is a tax, it is true, upon the receipts of sales made by him, and he is appointed, and required to give bond, but the tax is laid for the purpose of revenue, and the appointment, and requirement to give bond, are provisions of the law to secure the prompt pay-

ment of the taxes thus levied.   His business is essentially a private one ; he may sell or not, as he pleases, and is not in any respect under the slightest obligations to the public.

For these reasons the judgment below must be affirmed.

*Judgment affirmed.*

(Decided 22nd July, 1885.)


ALVEY, C. J., delivered the following dissenting opinion, in which Judge BRYAN concurred :

The theory upon which this case was tried in the Court below must have been that there was an implied warranty of title by the auctioneers who sold the piano to the plaintiff at public auction.   Hence the Court was asked to affirm, and did affirm, at the instance of the plaintiff, that if it should be found upon the evidence that the defendants had no title to the piano, and no lawful or rightful authority to sell the same, and that the true owner of the piano, subsequent to the sale, replevied the same from the plaintiff, then the verdict must be for the plaintiff, though it should be further found that the defendants, at the time of the sale, were auctioneers, and that the piano was sold by them at public auction.   And on the part of the defendants the Court refused to affirm, that if it should be found from the evidence that the piano had been brought to the auction rooms of the defendants for sale at public auction, and that they made an advance thereon, and advertised and sold the piano expressly in their character of auctioneers, in the usual course of making auction sales, and that the defendants acted in all respects in good faith, and the plaintiff knew at the time that they were acting in their representative character of auctioneers, and not as owners; and that upon making the purchase the plaintiff paid the price of the piano and removed the same, and the defendants settled their account with the party for whom

they sold the piano, before they had any notice of any question in regard to the title to the piano, or of the plaintiff's claim to recover back the price paid therefor; then the plaintiff was not entitled to recover back the price thus paid. These propositions manifestly had reference to and were intended to present the question, whether or not there was an implied warranty of title by the auctioneers; and the affirmative of that question seems to have been held by the Court, for, it not only granted the plaintiff's prayer, but in the judgment rendered (the Court acting without a jury) the amount recovered is the full price paid for the piano, with interest, and not simply the amount retained by the defendants for the advance made by them before the sale;—a result that could not have been arrived at, upon the facts of the case, except upon the theory of an implied warranty of title. There can be no doubt that, as a general principle, in every sale of personal chattels there exists an implied warranty of title by the vendor, unless such warranty is expressly negatived, or negatived by the special circumstances of the case. *Mockbee vs. Gardner,* 2 *H. & G.* 176; *Rockwell vs. Young,* 60 *Md.,* 563. The doctrine of *caveat emptor* is but an exception to or modification of this general principle, in its application to the sales of personal property. And the question here is, whether in a sale of a personal chattel by an official licensed auctioneer, in the City of Baltimore, made in the usual course of his business, there is an implied warranty of title by the auctioneer personally, where the name of the principal is not given at the time of the sale?

A general licensed auctioneer, appointed by the State, is a general commercial agent, and as such, he is subject to regulations in the performance of his duties by the statute law of the State. . For the City of Baltimore, auctioneers, not to exceed twenty in number, are authorized to be appointed by the Governor of the State, by and with the advice and consent of the Senate, for the term of two years.

He qualifies by obtaining a license for a fee to the State, and by giving bond, conditioned for the payment of the duties prescribed by law upon his sales, "and that he will in all things well, truly and faithfully, behave and conform himself, according to the true intent and meaning of the law." The duties upon sales are prescribed, and the auctioneer is required to make quarterly reports of his sales, and to account for the duties thereon, and his commissions are regulated by law. And any person acting as auctioneer without conforming to these provisions of law, is declared to be guilty of a misdemeanor. 2 *Vol. Code*, secs. 85 to 131, as modified by the Act of 1872, ch. 249.

By the well settled principles of law, an auctioneer has a special property in the goods entrusted to him for sale, and he has a lien on the same, and the proceeds thereof, for the charges of sale, his commissions and the auction duty which he is bound to pay. And having such special property in the goods intrusted to him, he may sue the purchaser thereof in his own name, or in the name of his principal, at his election. He is also, for certain purposes, deemed personally the vendor to the purchaser at the sale, unless the name of the principal be disclosed, and the latter be treated as the party making the sale. But this is so only in a special sense; for in many cases the auctioneer is deemed the agent of both the vendor and vendee, though the name of the principal vendor be not disclosed by the auctioneer at the time of the sale. *Williams vs. Millington*, 1 *H. Black.*, 81; *Sto. Ag.*, secs. 27, 107, 108. If, however, the sale at auction be made without disclosing the name of the principal at the time of sale, the purchaser is entitled to look to the auctioneer personally for the delivery of the goods sold, and the completion of the contract; and, if default be committed in this respect, the auctioneer is personally liable to the purchaser in damages. 2 *Kent Com.*, 536; *Hanson vs. Roberdeau, Peake's Cases*, 120; *Woolfe vs. Horne*, 2 *Q. B. Div.*, 355. But it does not fol-

Seemuller & Co. *vs.* Fuchs.

low from this that he is to be held liable as for an implied warranty of title to the goods sold.

In England, until within a comparatively recent period, it had been an unsettled question, whether in any case of the sale of a chattel in possession, and where the possession passed to the vendee by the contract of sale, there was any implied warranty of title. But since the case of *Eichholz vs. Banister*, 17 *C. B.*, (*N. S.*,) 708, decided in 1864, it seems to be regarded as settled, according to Mr. Benjamin, (*Benj. on Sales*, 2d *English Ed., p.* 523,) that " a sale of personal chattels *implies an affirmation* by the vendor that the chattel is his, and therefore he warrants the title, *unless it be shown by the facts and circumstances of the sale that the vendor did not intend to assert ownership,* but only to transfer such interest as he might have in the chattel sold." This is the English rule as between the vendor, the owner of the chattel, or the party who asserts ownership in himself, and the vendee. But does the same rule apply as between an official auctioneer, who sells in a representative capacity, and the purchaser of the chattel at an auction sale ? Of course, if the auctioneer in fact sells his own goods, or if he affirms the ownership to be in himself, or if he refuse upon request to disclose the name of his principal, he would be held to warrant the title ; or if he make fraudulent misrepresentations as to the title of the property sold by him, whereby the purchaser is deceived to his injury, he would be liable, upon failure of title, as for deceit. But the reason of the rule upon which the implied warranty of title is founded would seem clearly not to apply where the sale is simply made in fact by the auctioneer *bona fide* in his representative character, with no assertion or affirmation of title in himself, or representation whereby the purchaser is deceived. And hence, with the rule established in England as I have stated it, it is laid down in all the recent text writers treating of the subject, that "whenever a man sells goods generally,

and not in any particular character or capacity, such as auctioneer, agent, sheriff, pawnbroker, pledgee, &c., he must be taken to sell as owner." But "whenever a man does not sell goods as owner, but in some special character or capacity, and the purchaser has notice thereof, he is bound to look into the title of his vendor; for there is not, under such circumstances, any implied warranty of title on the part of the vendor." 2 *Add. on Contr.* (*8th Ed.,*) 971, 972; *Bateman on Auction Sales,* 193. See *Simmes vs. Marryat,* 20 *L. J., Q. B.,* 458. The auctioneer or party selling in a special character merely undertakes that he does not at the time he sells, know of any defect in his authority or right to sell, and he cannot be made responsible, after he has paid over the proceeds to his principal, for the payment of the purchase money to the vendee, unless it can be shown that he knew he had no right to sell or to pay over, and that, consequently, his conduct was fraudulent. 2 *Add. on Contr.,* 972; *Chapman vs. Spiller,* 14 *Q. B.,* 621. The same general principle is laid down by the American text writers, as will be seen by reference to 1 *Pars. on Contr.,* (*4th Ed.,*) 456, 458, and notes, and to *Sto. on Sales, sec.* 367, *a.* The general doctrine is well illustrated by the case of the sale of an unredeemed pledge by a pawnbroker. The pawnbroker as bailee, like a general auctioneer, is placed in possession of the goods, and he has power of sale upon default of the pawnor. In making the sale he only warrants the subject-matter of the sale to be a pledge, and that the time for its redemption has expired. He does not by implication warrant the title, or that the purchaser will not be evicted. As he sells in a special character, he is understood only to sell such interest as he may have in the subject-matter of the sale; and if the purchaser does not look into the matter of title, and it subsequently appears that the pledgor had no title to pledge, nor the pawnbroker to sell, and the purchaser is evicted, he cannot recover compensation for his

loss upon any principle of implied warranty of title. This would seem to be settled upon unquestionable authority.

In the leading case of *Morley vs. Attenborough*, 3 *Exch.*, 500, the defendant, a pawnbroker, had a harp pledged with him in the way of his business, and, the time having elapsed for its redemption, and the pledge being unredeemed, offered it for sale through certain auctioneers, who sold it to the plaintiff. It turned out that the harp had been pledged to the defendant by a person who had no title to it, and the real owner obliged the plaintiff to give it up, after it had been delivered to him by the defendant. And the question, and only question, as the case was presented on the pleadings, was as to the extent to which the defendant, by implication, warranted against the eviction of the plaintiff. PARKE, B., who delivered a thoroughly considered judgment, in the course of his opinion, said : "We do not suppose that there would be any doubt, if the articles are bought in a shop professedly carried on for the sale of goods, that the shopkeeper must be considered as warranting that those who purchase will have a good title to keep the goods purchased. In such a case the vendor sells 'as his own,' and that is what is equivalent to a warranty of title. But in the case now under consideration, the defendant can be made responsible only as on a sale of *a forfeited pledge eo nomine.* Though the harp may not have been distinctly stated in the auctioneer's catalogue to be a forfeited pledge, yet the auctioneer had no authority from the defendant to sell it except as such. The defendant, therefore, cannot be taken to have sold it with a more extensive liability than such a sale would have imposed upon him ; and the question is, whether on such a sale, accompanied with possession, there is any assertion of an absolute title to sell, or only an assertion that the article has been pledged with him, and the time allowed for redemption has passed." And the conclusion was, that it was unreasonable to con-

sider the pawnbroker, from the nature of his occupation, as having undertaken anything more than that the subject-matter of sale was a pledge and irredeemable, and that he was not cognizant of any defect of title to it; and it was so held by the whole Court.

The distinction thus made, between the case of a party selling as owner, and affirming the title to the chattel to be in himself, and the case of a sale made by a party in his representative capacity and without any such affirmation of title, is founded in the plainest reason and justice. A licensed bonded auctioneer, in the City of Baltimore, is not only an agent for those who entrust their property to him for sale, but he is a public officer. He is required to account to a public functionary for the duties on his sales, and he is required to account to his principals for the proceeds of the sales made by him, and that without delay. And that being so, there is no principle in the law of agency better established than that where one person deals with another knowing that other to be an agent, though even of an undisclosed principal, such person has no right to require the agent to restore to him money which the agent has accounted for and paid over to his principal, before notice of any adverse claim. When money so paid to an agent has once been *bona fide* parted with, without notice, the liability of the agent ceases, and the claim of the party paying it can be enforced only against the principal to whom the money has been paid over. *Holland vs. Russell,* 1 *B. & S.,* 424; *Shand vs. Grant,* 15 *C. B.* (*N. S.,*) 324; *Edwards vs. Hodding,* 5 *Taunt.,* 815. If he is to be held to warrant, by implication, the title of all the property he sells, how is he to be indemnified against liability upon payment over of the proceeds of sale? It is obvious his position would be one of great peril, unless he were to proclaim the name of his principal in the sale of each and every article sold by him, and to do that would, in many cases, defeat one of the

salutary objects of auction sales at regular auction rooms, at which parties might not, for obvious and entirely justifiable reasons, desire their names to be proclaimed in connection with the property offered for sale. If any purchaser desired the name of the real owner, it would be the duty of the auctioneer to disclose it, or, upon his refusal, he would be held to have assumed the position and liability of such owner. This rule would seem to afford to purchasers all the protection that they could in reason ask of the auctioneer. It was said by the Court of Appeals, in *Mockbee vs. Gardner, supra,* in speaking of the exemption of executors, trustees, &c., from liability for implied warranty of title, that the exemption of such agents from personal liability on such warranties would seem to be indispensable. For, as there asked, who would accept an office of the kind, if he were to become necessarily the guarantor of the good title of him whom he represents, in all the property committed to his charge, and which he might be required to sell? In all cases in which the title sold was ascertained to be defective after final distribution of the estate, the trustee, if a recovery were had against him, would have to look for indemnity to creditors, distributees, &c. In most instances his prospect of security would never be realized, and no power is given him to retain for such a contingency. And while that is so with respect to executors, trustees, and others, the same reasoning applies to the case of an official auctioneer. He, too, is required to pay over the proceeds of sale, and if the title of the property were afterwards found to be defective, he might, in many cases, be left without means of indemnification. Therefore, it would seem to be unreasonable to hold, that an official auctioneer, when acting in his representative capacity, and in the usual course of his business, warrants by implication the title to the property sold by him, in the absence of other circumstances, to which I have referred, by which he may fix liability upon himself as if he were owner.

It is supposed that the case of *Fisher vs. Rieman,* 12 *Md.,* 497, has some bearing upon the question under consideration.   But an examination of that case will show that it has no such bearing whatever.   That was a case where the defendant, a bill and note-broker, acting for an undisclosed principal, sold, and passed by delivery merely, without endorsement, a negotiable promissory note to the plaintiff, making no express warranty or representation in regard to the genuineness of the signatures to the note, and being entirely ignorant of the fact that any of them were forged ; but two of the signatures thereto proved to be forged, and the question was, whether there was an implied warranty, by the broker, of the genuineness of the signatures to the note ; and the Court held that there was not : That the only implied warranty involved in the sale was, that the broker was lawfully entitled to dispose of the paper to the plaintiff, about which there was no contention.   The broker, acting in good faith, had a right to dispose of the paper in the market for what he could get for it, and there was no question as to the existence of any paramount title to the paper in a third party.   That case, therefore, can have no special bearing upon the question involved in the case before us.

Here, there can be no pretence whatever, that the plaintiff was not aware of the fact that the defendants were acting in their representative character as auctioneers in the sale of the piano.   He states himself that he had examined the piano at the warehouse of the defendants, before it was offered for sale, and that he had been informed by one of the defendants that they had made an advance upon it of $100 in anticipation of the sale ; and with that information he became the purchaser at public auction.   It is made clear from the evidence that the legal title to the piano was in F. G. Smith, and that it had been hired to one Weeks, from whom it got into the possession of Davis, who placed it with the defendants for sale.   There is no

evidence, however, to show that the defendants were aware, or had any reasonable ground to suspect, that the title of Davis, or that of the party for whom he acted, was not good. And upon these facts I am clearly of opinion that there was no implied warranty of title by the defendants.

The auction sale, however, failing to pass title to the plaintiff, and the property having been taken from him by the owner, there was a failure of consideration for the money paid to the defendants on the purchase. And as it appears that the larger part of the money so paid is still retained by the defendants, for the advance made on the piano, and for expenses and commissions, that much of the price paid is, in contemplation of law, money had and received to the use of the plaintiff, and he may, under the declaration in this case, recover it of the defendants. The latter cannot, either by law or equity, apply the money received of the plaintiff, on a consideration which has wholly failed, to the payment of a debt due from a party who had no title to the property. The right of the plaintiff thus to recover of the defendants is fully recognized by the Court of Appeals, in the case before referred to, of *Mockbee vs. Gardner*, 2 *H. & G.*, 177, 178. See, also, *Franklin & Armfield vs. Long*, 7 *G. & J.*, 407.

From what I have said it follows, that the instruction granted at the instance of the plaintiff, based as it is upon the theory of an implied warranty of title by the defendants personally, was erroneous; but that there was no error in refusing the prayers offered by the defendants. In my opinion, therefore, the judgment of the Court below should be reversed, and a new trial awarded; and in this opinion Judge BRYAN authorizes me to say he concurs.