## Hayes, Appellant, v. D. P. S. Nichols Co.

*Principal and agent—Auctioneers—Undisclosed principal—Warranty of horse.*

Where an auctioneer warrants the soundness of a horse which he sells for another at a public sale, and does not disclose the name of

his principal, he will be liable to the purchaser of the horse for a breach of the warranty.

Argued Nov. 29, 1915.    Appeal, No. 291, Oct. T., 1915, by plaintiff, from judgment of Municipal Court, Philadelphia Co., Dec. T., 1914, No. 279, for defendant n. o. v. in case of John J. Hayes v. D. P. S. Nichols Company. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ.    Reversed.

Assumpsit for breach of a warranty.    Before CRANE, J.

The facts are stated in the opinion of the Superior Court.

At the trial the jury returned a verdict for plaintiff. Subsequently the court entered judgment for defendant n. o. v.

*Error assigned* was the judgment of the court.

*Joseph H. Taulane,* of *White, White & Taulane,* with him *Joseph H. Hinkson,* for appellant.—An auctioneer is liable on his warranty where he sells a horse without disclosing that he is selling for a principal: Mills v. Hunt, 20 Wend. (N. Y.) 431; Meyer v. Redmond, 205 N. Y. 478; Thomas v. Kerr, 3 Buch (Ky.) 619; Schell v. Stephens, 50 Mo. 375; Seemuller v. Fuchs, 64 Md. 217.

*Henry A. Hoefler,* for appellee, cited: Gardiner v. D. P. S. Nichols Co., 48 Pa. Superior Ct. 510.

OPINION BY HEAD, J., October 9, 1916:

The plaintiff, desirous of purchasing a horse, attended a sale conducted by the defendant at its place of business in the City of Philadelphia. A certain black horse was brought into the ring for the inspection of prospective purchasers and thereupon the defendant publicly announced a warranty that the horse had good wind, good eyes, and would work well single or double, and further

that if it should turn out the horse did not come up to the requirements of the warranty, the purchaser could return him on or before the following Saturday and his money would be refunded. No statement was made or intimation given by the defendant that it was selling the horse for some other person or that it was not the property of the defendant. Nothing was said or done to put the purchaser upon notice that the warranty was not intended to be binding upon it. The plaintiff bid for the horse and it was knocked down to him for the sum of one hundred and forty dollars, which he then paid and took the horse home. After having tried him thoroughly, as the plaintiff alleges, it was found that he was windbroken and would not pull when hitched to a loaded wagon. The plaintiff thereupon returned the horse, within the time named, and demanded the return of his money. The defendant, not denying that such warranty had been given but alleging there had been no breach of it, refused to refund the money and the plaintiff brought this action to recover it. The case went to trial on the issue of fact thus raised by the parties, and the testimony being conflicting, this question was submitted to the jury by the learned trial judge in a fair, adequate and impartial charge. The jury found for the plaintiff and their verdict thus establishes the fact there had been a breach of the warranty. Thereafter the learned court below entered a judgment in favor of the defendant non obstante veredicto without filing any opinion to indicate the reasons supporting such judgment. The plaintiff appeals.

The legal question involved is both single and simple. If the defendant, in execution of authority delegated to him by the owner of the horse, undertook to warrant to the purchaser the possession of certain qualities by the animal, it became its duty to inform the prospective purchasers of the identity of its principal and that the warranty given was given in his name and by his authority. In such a case no liability would rest upon the agent for

a breach of the warranty, as the purchaser would be obliged to look to the principal in whose name and behalf it was given. On the other hand, if one, who is in fact an agent, undertakes to deal with the property of the principal as his own and gives no notice that in dealing with it he is acting for another, he becomes personally liable for his own undertakings. This legal principle rests upon sound reasons and is sustained by an abundance of authority. We select but a few excerpts from text-books and the opinions of courts in several jurisdictions to show how widely it is accepted as sound. In 2 Meecham on Agency (2d Ed.), page 1920, paragraph 2342, it is said: "An auctioneer, who at the time of the sale discloses the name of his principal and sells as his agent, incurs, while keeping within the limits of his authority, no personal liability to the purchaser upon the contract of sale; but on the other hand the rule is well settled that an auctioneer who sells or makes other contracts without then disclosing his principal is personally liable upon the contract; and the purchaser may hold him personally liable for its completion." In Mills v. Hunt, 20 Wend. (N. Y.) 431, Chancellor Walworth said: "The mere fact that they were auctioneers was not sufficient notice to the purchaser that they were not selling their own goods......At this day the law must be considered as settled that a vendor or purchaser, dealing in his own name without disclosing the name of his principal, is personally bound by his contract; and it makes no difference that he is known to the other party to be an auctioneer or broker usually employed in selling property as the agent for others." The principle is well stated by ROBINSON, J., in Seemuller v. Fuchs, 64 Maryland 217, thus: "Now we take the law to be well settled that one selling property as an agent, without disclosing the name of his principal, binds himself personally. In such cases the purchaser has the right to rely upon the responsibility of the agent by whom the sale is made and is not obliged to rely upon the responsibility of an un-

known and perhaps irresponsible principal." In the same opinion, for the purpose of showing the length of time during which this principle has been recognized, it is said: "So far back as Hanson v. Roberdean, Peake 120, Lord Kenyon said: 'That though where an auctioneer names his principal it is not proper he should be liable to an action, yet it is a very different case when the auctioneer sells the commodity without saying on whose behalf he sells it. In such a case the purchaser is entitled to look to him personally for the completion of the contract.'"

In the present case the jury, having found that the warranty was given and that there had been a breach of it, the defendant must answer for the consequences thereof. We are unable to perceive therefore any satisfactory ground for setting aside the verdict and refusing to enter judgment thereon. Manifestly our own case of Gardner v. Nichols Co., 48 Pa. Superior Ct. 510, furnishes no authority for the action of the learned court below. The briefest statement of facts appearing in that case and of the legal principle involved will show the radical difference between the two cases. In the one just cited the owner of a horse delivered it to the defendant with authority to sell it and warrant it in certain respects. This was the full extent of the agent's authority. The agent sold the horse, delivered it to the purchaser and received the purchase-money. His powers were thus fully executed and his authority exhausted. When the owner demanded his money from the agent, the latter refused to pay. In justification of this refusal the agent sought to set up, in an affidavit of defense, that the purchaser had claimed there was a breach of the warranty given at the time of the sale. The agent undertook to decide for itself, without the knowledge or consent of the owner, that there had been in fact such breach, and because of that conclusion returned the money to the purchaser. It was held the agent had gone clearly outside of any authority delegated to it by its principal and

that when it had delivered the horse and received the purchase-money, that money, less the agreed on commission of the agent, was the property of the principal and the former had no authority to divert it or dispose of it in any other way than by accounting for it to the principal.

We are of opinion the learned court below fell into error in entering judgment for the defendant n. o. v. and thus depriving the plaintiff of the fruits of the verdict.

The judgment is reversed and the record is now remitted to the court below with direction to enter judgment for the plaintiff on the verdict.